## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRIS FOLKERS,                         )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )                    Case No. 2:14-cv-02429-DDC-TJJ
                                       )
KEITH DRILL,                           )
LAURA McCONWELL, and                   )
WAYNE BRINKLEY,                        )
                                       )
                    Defendants.        )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I.        INTRODUCTION

The Plaintiff, Chris Folkers, who is *pro se*, brings this action against Mission, Kansas Municipal Court Judge Keith Drill, Former Mayor Laura McConwell, and Mission Police Officer Wayne Brinkley.  Although Folkers' Amended Complaint is largely unintelligible, it appears to allege a violation of his rights under the United States Constitution, the Kansas Constitution, federal and state statutes, and state tort law.  The history of this action and a companion state action are necessary to understand the background for this present Motion.

Folkers alleges that on May 27, 2014, while appearing as a defendant before Judge Drill on a criminal matter in the Mission Municipal Court, Drill violated his rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as rights found under the Kansas Constitution and state law, together with other unspecified state and federal statutes.  During the hearing, Judge Drill held Folkers in contempt, and Folkers claims that he was detained by Mission Police Officer Brinkley.  Folkers makes no allegation that either Judge Drill or Officer Brinkley committed any act outside of the Municipal Court setting.  Further, he makes no allegation that Former Mayor Laura McConwell had any personal contact with him.

On August 12, 2014, Folkers filed his Petition pro se in the District Court of Johnson County, Kansas.  In that Petition, he alleged claims against Judge Drill in his individual and official capacities.  Judge Drill removed the action to this court on August 27, 2014.[1]

On August 29, 2014, Judge Drill filed his Motion to Dismiss this case for failure to state a claim upon which relief may be granted. [Doc. 5].  The same day, Folkers filed a "Motion to Amend Complaint" [Doc. 15] in the District Court of Johnson County, Kansas, which sought to add two defendants [McConwell and Brinkley] and assert additional claims against these Defendants.[2]

On January 9, 2015, the Court entered its Memorandum and Order [Doc. 33] granting Plaintiff's Motion and directing the clerk of the court to file the Amended Complaint [Doc. 34]. Both the Complaint and Amended Complaint are referred to here in order to provide the Court with a complete overview of the relevant facts.

Folkers' Amended Complaint should be dismissed on the following grounds:

1.      Folkers fails to state a claim upon which relief may be granted.

2.      Judge Drill is entitled to absolute or qualified immunity.

3.      The remaining Defendants are entitled to qualified immunity.

4.      Folkers has failed to plead and comply with K.S.A. §12-105b as to his tort claims which deprives him of standing and this Court of subject matter jurisdiction over those claims.

5.      The Court should decline to exercise jurisdiction over Folkers' request for Declaratory Relief.

---

[1] Doc. 1.

[2] Folkers has filed identical pleadings in *Folkers v. Simmons, et al.*, Case No. 2:14-cv-02515-EFM-JTO (D. Kan. ) and *Folkers v. Castle*, 14-CV-06435, in the District Court of Johnson County, Kansas.  This latter action has been dismissed by Judge Sutherland on Defendants' Motion to Dismiss.

## II.    STANDARDS APPLICABLE TO MOTION TO DISMISS

In ruling on Defendants' Motion to Dismiss, the court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible and not merely conceivable on its face. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the court draws on its judicial experience and common sense. *Id.*

The Court need not accept as true those allegations which state only legal conclusions. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The plaintiff bears the burden to frame his complaint with enough factual matter to suggest that he is entitled to relief.  It is not enough to make thread-bare recitals of a cause of action accompanied by mere conclusory statements.  *Iqbal* at 678.  The complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  .  "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007).  If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

A plaintiff makes a facially plausible claim when he pleads factual content from which the court can reasonably infer the defendant is liable for the misconduct alleged.  *Id.*  A plaintiff must show more than a sheer possibility that a defendant has acted unlawfully–it is not enough to plead

facts that are "merely consistent with" a defendant's liability. *Id.* (Quoting *Twombly*, 550 U.S. at 557).

A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. *Id.* Similarly, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but not "shown"– that the pleader is entitled to relief. *Id.*

Although the pleadings of a pro se plaintiff are to be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), to avoid dismissal the pro se complaint "must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action ... [and] must allege sufficient facts to state a claim which is plausible-rather than merely conceivable-on its face." *Fisher v. Lynch*, 531 F.Supp.2d 1253, 1260 (D.Kan. 2008).  Nor is the court an advocate and will not allege additional facts or assert alternative legal theories for the pro se party.  *See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

### III.    FACTS FOR MOTION TO DISMISS[3]

In his Complaint [Doc. 1], Folkers alleges that he is a resident of the State of Kansas and appeared on May 27, 2014, before Judge Drill in the Mission, Kansas Municipal Court on a criminal matter.  (Complaint, Doc. 1, Section IV(41)).[4]  Folkers claims that during his appearance in Municipal Court, he challenged the standing and jurisdiction of the City to bring the action against him.  (Amended Complaint, Doc. 34, Count 1, ¶1(a-j)).  Folkers alleges that during this

---

[3] Folkers' Amended Complaint does not contain "well-pleaded" facts in the first instance.  Therefore, the facts set forth in this section are those facts which appear germane to the claims Folkers attempts to allege in his Amended Complaint.
[4] Folkers was in Municipal Court as a result of a Notice to Appear for a speeding violation.

hearing Judge Drill threatened to hold him in contempt and, eventually, had him restrained and handcuffed.  (*Id.* ¶1(q-rrr)).

Folkers makes no specific allegations against Former Mayor McConwell, other than to allege that she is "associated with the City" and, presumably while mayor, was the "chief officer with management control over the avenues of the City of Mission and the Mission Municipal Court." [Amended Complaint, Doc. 34, Count 6, at pp. 8, 9].  However, McConwell was not even Mayor during the events alleged in Folkers Amended Complaint.[5]

Folkers alleges that Officer Brinkley, at the direction of Judge Drill, restrained Folkers "through the use of shackles" for a period of more than two hours.  [*Id.* at Count 1, ¶1(q-t, nnn-rrr)].

## IV.      ARGUMENTS AND AUTHORITIES

In his Amended Complaint, Folkers alleges seven separate counts which are largely unintelligible and requests an order "nullifying" any summons issued to him by the City and for money damages under some unspecified section of the United States Code.  As pled, none of these are viable claims against any of the Defendants.

### A.      Official Capacity Claims.

In his Amended Complaint, Folkers alleges that he brings this action to recover damages "against each defendant in their official capacities in part and as each individual people in part…" [Doc. 31 at p. 1].  A close examination of Folkers' Amended Complaint fails to reveal facts sufficient to state an official capacity claim against any individual defendant.

It is well established that a personal capacity suit seeks to impose personal liability on a government officer, whereas an official capacity suit is simply another way of suing a

---

[5] See, http://www.missionks.org/pView.aspx?id=18416&catid=657 which indicates that she left office in April 2014.

governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In other words, an "official capacity" suit against a state actor is essentially the same as a suit against the governmental entity that employs him. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, n.55 (1978).

For example, under §1983 a municipality may not be held liability on a theory of *respondeat superior*. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing *Monell*, 436 U.S. at 691, 698). Instead, a plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution or were carried out by an official with final policymaking authority with respect to the challenged action." *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 2001) (internal quotation marks omitted).

Here, Folkers has sued a municipal court judge, a former mayor, and police officer alleging claims in their official capacity. However, nowhere in his Amended Complaint does he allege facts establishing conduct on the part of any Defendant that is representative of an official policy or custom of the City or carried out as an official with final policymaking authority. For this reason, Folkers' official capacity claims must be dismissed.

**B.    Individual Capacity Claims.**

   **1.    <u>Absolute Immunity.</u>**

Judges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction. *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)). A judge does not act in the clear absence of all jurisdiction even if "the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356-57. Moreover, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave

procedural errors." *Id.* at 359. Immunity is justified and defined by the functions it protects and serves, not the person to whom it attaches. *Valdez v. City and County of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989).

The United States Supreme Court has articulated two factors to determine whether an act by a judge is a judicial act. *Stomp v. Sparkman*, 435 U.S. 349, 362 (1978). These factors are whether the act is a function normally performed by a judge and whether the parties dealt with the judge in the judge's judicial capacity. *Id.* In this case, both factors are satisfied. The conduct of Judge Drill, that Folkers' alleges violated his rights, involves acts normally performed by a judge, including presiding over an arraignment, making rulings on legal and evidentiary matters, enterind pleas and setting cases for trial. By his own admission, Folkers dealt with Judge Drill solely in the Judge's judicial capacity. Therefore, these acts were judicial acts and immunity applies.[6]

### 2.   <u>Qualified Immunity.</u>

The United States Supreme Court has recognized that public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Because it is "the norm" in private actions against public officials, officials enjoy a presumption of immunity when the defense of qualified immunity is raised. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010)(quoting, *Harlow*, 457 U.S. at 807); *See, Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011))("Law enforcement officers are, of course, entitled to a presumption that they are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs.")

A plaintiff seeking to overcome that presumption must make a two-part showing: First,

---

[6] Judge Drill also enjoys immunity as to Folkers state tort claims under K.S.A §75-6104(b)

that a public official violated the plaintiff's constitutional (or, in the case of a Section 1983 action, more generally, federally protected) rights; and second, that these rights were clearly established at the time of the alleged violation.  *See, Lewis,* 604 F.3d at 1225; *Thomson v. Salt Lake Cnty.,* 584 F.3d 1304, 1312 (10th Cir. 2009).  This standard, by design, "gives government officials breathing room to make reasonable, but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd,* ___ U.S. ___, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1148 (2011).

The relevant question in the "constitutional violation" inquiry is fairly straightforward: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

The "clearly established" inquiry requires not a generalized examination of the issue, but instead requires a case specific analysis.  *Saucier*, 533 U.S. at 201 (holding that the "clearly established" analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition.").  Thus, the court has instead held that:

> "[c]learly established" for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent."

*Wilson v. Lane*, 526 U.S. 603, 614-15 (1999).

Finally, and perhaps most important, "a government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that <u>every</u> "reasonable official would have understood that what he is doing violates the right." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2084, 2085 (2011)(emphasis added).

Here, Folkers has failed to demonstrate that any individual defendant violated his

constitutionally rights in the first instance.  Therefore the inquiry stops there.  However, even if a violation is identified, he cannot maintain his heavy burden for demonstrating that the right was "clearly established."

**C.**     **Folkers Fails to State a Claim Under Any Legal Theory**.

As noted above, the majority of Folkers' Amended Complaint is unintelligible.  The introductory paragraph indicates he is attempting to assert claims for a violation of state and federal felony crimes, violations of 42 U.S.C. §§ 1983, 1985, 1986 and 1966, as well as other federal statutes, together with alleged violations under the Kansas United States Constitutions.  [Doc. 34 at p. 1].  However, even a liberal reading of the Amended Complaint fails to reveal facts supporting claims under any of these theories and fails to identify any specific violation under any of these theories.

**1.**     **Folkers' Petition Fails to Comply with F.R.C.P., 8.**

Fed. R. Civ. P. 8 requires a short and plain statement of the claim, showing that the claimant is entitled to the relief sought.  While the brevity and conciseness of a complaint is typically an issue examined in cases involving *pro se* litigants, case law indicates that when a complaint is so lengthy and verbose that is becomes confusing, the complaint violates Rule 8.  In the words of Judge Crow, "the sheer prolixity of plaintiff's complaint violates the requirement under Rule 8 of the Federal Rules of Civil Procedure that a pleading present a short and plain statement of the claim showing that the pleader is entitled to relief."  *Triplett v. United States Department of Defense,* No. 11-2105-SAC, 2011 WL 1113551, *1 (D. Kan. March 24, 2011).  "[I]n unusual cases an excessively lengthy complaint may be so confusing and disjointed as to warrant dismissal for failure to comply with Rule 8."  *George v. Kraft Foods Global, Inc.*, No. 06-cv-798-DHR, 2007 WL 853998, *3 (S.D. Ill. 2007)*; see also, United States v. Lockheed-Martin Corp.*, 328 F.3d 374,

376-78 (7th Cir. 2003)(A complaint covering 155 pages was so confusing that neither the court, nor the adverse parties should be required to "try to fish a gold coin from a bucket of mud."), *cert denied.*, 540 U.S. 968 (2003).

Here, Folkers' Amended Complaint spans 24 pages, and includes what might be loosely considered motions in the Municipal Court, discovery requests, and orders related to those requests.  In spite of its length, the Amended Complaint is long-winded and contains a mismatch of allegations and general statements about the Defendants' alleged conduct.   The Amended Complaint is confusing, hard to follow, and requires the court and Defendants to cross-reference paragraphs and subparagraphs, as well as sift through a large sloth of various allegations in order to isolate the factual basis upon which Folkers' claims are based.  Quite simply, Folkers has failed to comply with the most basic tenet of filing a claim, and for that reason his Amended Complaint should be dismissed.

> **2.**     **RICO.**

In his Amended Complaint, Folkers attempts to assert a RICO claim, apparently arising out of the operation of the Mission Municipal Court.  [Doc. 34, Count 6 at p. 8].  He appears to claim that the individual Defendants and the City are running a scheme to extract money from citizens.[7]

In order to state a claim a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must set forth four elements:  (1) Participation in conduct, (2) of an enterprise, (3) through a pattern, and (4) of racketeering activity.  *Garrett v. Selby, Connor, Maddux & Janner*, 425 F.3d 826, 838 (10th Cir. 2005); *Bancoklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999);

---

[7] Folkers made this same claim in the District Court of Johnson County, Kansas, in *Folkers v. Castle*, only in that action he alleged that the County and the State also engaged in the same RICO scheme.

*Ferluga v. Eickhoff*, 408 F.Supp. 2d 1153 (2006).   Additionally, inherent in the statute, is the requirement that a RICO plaintiff demonstrates that he has been damaged.  Specifically, the RICO Act provides a private right of action for "[a]ny person injured in his business or property" as a result of the violation.  18 U.S.C. § 1964(c).  However, a plaintiff is not necessarily injured simply because the defendant violated RICO.  *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 266 (1992).  Standing for private individuals under RICO requires a plaintiff to have "been injured in his business or property by the conduct constituting the violation."  *Sedima v. Imrex, Co.,* 473 U.S. 479, 496 (1985).  "A plaintiff may not sue under RICO unless he can show *concrete* financial loss."  *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492, n. 16 (5th Cir. 2003); *Robinson v. Tucker*, 2012 WL 5499439, at *2 (D. Kan. November 13, 2012).

Here, the elements are discussed in reverse order.

a)      **Racketeering Activity.**

Racketeering activity is frequently described as a "predicate act" or "predicate acts" which consists of the federal and state crimes identified in 18 U.S.C. § 1961(1).  *United States v. Smith*, 413 F.3d 1253, 1268-69 (10th Cir. 2005), *Petition for Cert. filed,* 546 U.S. 1120 (2005); *Ferluga v. Eickhoff*, 408 F.Supp. 2d 1153, 1159 (2006).

"Civil RICO is an unusually potent weapon – the litigation equivalent of a thermo nuclear device.  Because the "mere assertion of a RICO claim…has almost inevitable stigmatizing effect on those named as defendants…court should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Dubai Islamic Bank v. Citibank, N.A.*, 256 F.Supp.2d 158, 163 (S.D. N.Y. 2003).  Further, the elements of Section 1962(c) must be established as to each individual defendant."  *In re Terrorists Acts on September 11, 2001*, 349 F.Supp.2d 765, 827 (S.D. N.Y. 2005)(ci*ting, US Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.Supp.2d 532, 451 (S.D. N.Y.

2004).

Liberally construing the allegations in Folkers' Petition, he attempts to allege the predicate act of a "debt collecting scheme".  His assertion of that scheme essentially is that the Mission Municipal Court operates to extort money from people under false or fraudulent misrepresentations.  In doing so, however, he does not specifically allege that he was the victim of extortion.  That is, he does not assert that he was required to pay money as part of the alleged scheme.

At common law, extortion was a property offense committed by a public official who took "any money or thing of value" that was not due to him under the pretense that he was entitled to such property by virtue of his office.  *4 W Blackstone, Commentaries on the Laws of England,* 141 (1765).  In 1946, Congress enacted the Hobbs Act which explicitly "expanded the common-law definition of extortion to include acts by private individuals."  *Evans v. United States,* 504 U.S. 255, 261 (1991).  White the Hobbs Act expanded the scope of the common-law extortion to include private individuals, the statutory language retained the requirement that property must be obtained. *See,* 18 U.S.C. § 1951(b)(2).

Congress used two sources of law in formulating the Hobbs Act:  The Penal Code of New York and the Field Code, a 19th century model penal code.  *See, Evans, supra,* at 261-262, n. 9. Both the New York statute and the Field Code define extortion as "the obtaining of property from another, without his consent, induced by wrongful use of force or fear or under color of official right."

New York case law before the enactment of the Hobbs Act demonstrates that this "obtaining of property" requirement included both a deprivation and acquisition of property.  *See, People v. Ryan,* 232 N.Y. 234, 236 (1921)(Explaining that an intent "to extort" requires an

accompanying intent to "gain money or property").   Subsequently, the United States Supreme Court has also recognized that the "obtaining" requirement of extortion under New York law entailed both a deprivation and acquisition of property.   *United States v. Enmons*, 410 U.S. 396, 406, n. 16 (1973).

In the present case, Folkers does not allege that any of the individual Defendants or the City received property from him.   In fact, he makes no allegation that he has had to pay any money to the City as a result of these traffic citations.   And, while he might allege that the individuals carried out "acts," he does not articulate, as to each individual, what those acts were or how they were carried out.   Rather, he claims that the operation of the Municipal Court resulted in a deprivation to unspecified persons.

The requirement that the extortionist or a third party receive the property of which the victim is deprived has been made clear by a number of courts, the most succinctly of which was stated in *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 397 (2003).   In *Scheidler*, plaintiffs brought a class action alleging that individual anti-abortion activists engaged in conspiracy to close all abortion clinics through a pattern of illegal activity.   Chief Justice Rehnquist, writing for the Court, held that because the petitioners do not obtain or attempt to obtain property from the plaintiffs, there was no basis to find that they committed extortion under the Hobbs Act, the statutory language of which requires "the obtaining of property from another."   The court supported its conclusion that "obtaining" requires "acquiring" by pointing out that removing this requirement would eliminate the distinction between extortion and coercion.   *Id.*

Because Folkers has failed to adequately plead sufficient predicate acts to constitute a RICO claim, his Petition should be dismissed.

### b)  Pattern.

"A pattern of racketeering activity must include commission of at least two predicate acts." *Garrett,* 425 F.3d at 838; *see also,* 18 U.S.C. § 1961(f).   While Folkers attempts to allege a predicate act by referring to certain conduct, these allegations are not sufficient to establish a pattern of racketeering activity.   *Smith,* 413 F.3d at 1269.   Specifically, Folkers alleges "these conducts are repeated over and over upon people (victims) in a pattern scheme" without explaining the conduct are identifying the individual involved in the conduct. [Petition, Count 7, at p. 5].

In order to satisfy RICO's "pattern" requirement, the Supreme Court has focused on two elements:  (1) relationship; and (2) continuity.   *SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1516 (10th Cir. 1990).   Specifically, the plaintiff must show "a relationship between the predicates and the threat of continuing activity."   *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001).

Here, Folkers' allegations do not sufficiently identify either element.

### c)  Enterprise.

A RICO enterprise "includes any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4).  The existence of an enterprise requires proof (1) of an ongoing organization with a decision-making framework or mechanism for controlling the group, (2) that the various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity.   *Smith*, 413 F.3d at 1266-67.

It appears that Folkers claims the enterprise is the Municipal Court.   For purposes of this Motion, it is assumed that this allegation of enterprise is sufficient.

### d)  Participation in Conduct.

"The Supreme Court has adopted the 'operation or management' test to determine whether

a defendant has participated in the conduct of the affairs of a RICO enterprise." *Banc Oklahoma*

*Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999).  This means that for

liability to exist:

> "The defendants must have participated in the operation or management of the RICO enterprise.  One must have some part in directing those affairs of the enterprise, although it is not necessary for the participant to have significant control.  The word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required."

*Id.* at 1100-01.  (Quotations, citations, and brackets omitted; Emphasis in original).

Folkers' allegations fall far short of this standard.  That is, he fails to articulate with any

specificity what each of the individuals did to carry on the RICO enterprise.

Because Folkers cannot fulfill three of the four required elements of a RICO claim, the

Petition should be dismissed.

**3.      Conspiracy.**

In his Amended Complaint, Folkers attempts to assert conspiracy claims based upon all

other claims.  These appear in Count 2 and Count 7, and it is unclear whether the conspiracy claims

are being asserted under both state and federal law.   However, based upon the introductory

paragraph of Folkers' Amended Complaint, it may be assumed that he is proceeding under 42

U.S.C. § 1985 and, specifically, Section 1985(2).  This is also supported by his reference in Count

7 to previous Counts which deal with federal statutes. Additional, he attempts to assert a claim

under §1986 which deals with the failure to prevent a conspiracy.  Both Counts will be discussed

in order.[8]

---

[8] Folkers also refers in his Petition to 42 U.S.C. §1966.  That statute could not be located by the City Defendants so it

{O0319944}

a)    § 1985

To establish a conspiracy claim under §1985(2), a plaintiff must plead and prove three elements:  (1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified, and (3) injury to the plaintiff. 42 U.S.C. § 1985(2); *see also, Brever v. Rockwell Int'l Corp.*, 430 F.3d 1119, 1126 (10th Cir. 1994).[9]

For the conspiracy element, "the sequence of events alleged [must be] sufficient to allow a jury to infer from the circumstances that the conspirators had a meeting of the minds." *Brever*, 430 F.3d at 1127 (Internal quotation marks omitted).   "While more than mere conclusory allegations are required to state a valid claim, the nature of conspiracies often make it impossible to provide details at the pleading stage and…the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint."  *Id.* at 1126.  Nonetheless, a claim fails when the complaint does not allege either that the defendant's actions in some way were designed to intimidate or deter the plaintiff from appearing in a judicial proceeding, *see, Glass v. Pfeffer*, 849 F.2d 1261, 1265 (10th Cir. 1988), or to injure a person for appearing in court. *See, Haddle v. Garrison*, 525 U.S. 121, 125 (1998).

Here, Folkers' Amended Complaint falls far short of the allegations necessary to state a claim under §1985(2).  He does not allege that he was intimidated or deterred from appearing in a judicial proceeding.  He cannot do so because he did appear.  Also, he cannot reasonably allege that he was injured for appearing in court under the facts presented.

---

is not addressed.

[9] It is unlikely that Folkers attempts to assert a §1985(3) claim, because an essential element of that claim is racially discriminatory animus.  Folkers makes no allegation of this in Amended Complaint.  *See, Paris v. SW. Bell Tell. Co.*, 94 F.Appx. 810, 815 (10th Cir. 2004).

Folkers' Amended Complaint is also deficient because it does not establish the conspiracy element in that he does not articulate a meeting of the minds to harm him in ways prohibited by §1985.  In order to succeed on this claim, Folkers must prove both the existence of a conspiracy and, for example, the deprivation of a constitutional right.  *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir. 1990).  As more fully discussed below, Folkers has failed to properly assert a violation of his constitutional rights in the first instance and, therefore, cannot state a claim of conspiracy under §1983 or otherwise.  This is true for all of his conspiracy claims.  That is, he has failed to properly allege an underlying injury that would then form the basis for a conspiracy claim.

Finally, conclusory allegations of conspiracy are insufficient to state a claim.  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994); *Tonkavich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  The general allegations contained in the Petition do not "raise a right to relief above the speculative level" or contain an "enough facts to state a claim for relief that is plausible on its face."  *Id.*

### b)      § 1986

42 U.S.C. §1986 provides for the recovery of damages under certain circumstances for a where a person has knowledge of the wrongs conspired to be done in violation of §1985 and, having power to prevent or aid in preventing the commission, neglects or refuses to do so if such wrongful acts are actually later committed. Folkers does not mention in the body of his Amended Complaint, beyond the introductory paragraph on Page 1, the specific application of §1986.

To be liable for a violation of §1986, a defendant must have actual knowledge that unconstitutional conduct is about to be committed.  *Brandon v. Lotter*, 976 F.Supp. 872, 876-77 (D. Neb. 1997); *Obu-Nantambu-Lel v. Lovinger*, 2007 WL 684138, *6 (D. Kan. January 3, 2007).  Here, the Amended Complaint does not allege when or how each individual defendant was notified

of alleged unconstitutional actions.   Rather, Folkers contends, in conclusory fashion, that the individual Defendants had knowledge and failed to act.   This form of pleading is insufficient to survive a challenge under Rule 12.   *See, Delatorre v. Minner,* 238 F.Supp. 2d 1280, 1285 (D. Kan. 2002) ("[r]eferencing a legal theory by name and generally alleging some of its elements outside of any specific factual context or without any detail will not suffice" to defeat a Rule 12(b)(6) motion).

Based upon the foregoing, Folkers' fails to state a claim for conspiracy or failure to prevent a conspiracy under any theory.

### 4.     **FDCPA.**

In Count 5 of Folkers' Amended Complaint, he alleges that the Municipal Court is operating a "debt collecting scheme" to collect money by threat of fear, intimidation and force. The operative section of the FDCPA is not specified and Folkers simply refers to this cause of action in the first paragraph of the Amended Complaint as "18 U.S.C. (sections)."

Congress enacted the FDCPA in 1977 with the express purpose to "eliminate abusive collection practices by debt collectors, to ensure that those collectors who refrain from using debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692(e).   The Act regulates interactions between consumer debtors and "debt collectors."

The FDCPA establishes two alternative predicates for "debt collector status":  (1) engaging in debt collection as the "principle purpose" of the entities business; or (2) engaging in debt collection "regularly."   *Goldstein v. Hutton*, 374 F.3d 56, 61 (2nd Cir. 2004); *James v. Wadas*, 724 F.3d 1312 (2013).

Applying these principles to Folkers' Amended Complaint, he fails to allege sufficient facts

to state a claim under the FDCPA.  First, there is no allegation that any "debt" involved a consumer debt.  Second, the primary purpose of the Municipal Court is the enforcement of municipal and state laws.  The involvement of the individuals named is in furtherance of the mission of the Municipal Court.  Finally, the Municipal Court is not in the business of "regularly" collecting debt.  Rather, any collection that occurs involves the collection of fines and fees, but not debt.

For these reasons, Folkers fails to state a claim under the FDCPA.

**5.**     **Kansas and United States Constitutions.**

In Count 1 of his Amended Complaint, Folkers alleges a violation of Section 1, 3, 8, 10, 15, and 20 of the Kansas Constitution, and the First, Fourth, Fifth, Sixth, Tenth, and Fourteenth Amendments to the United States Constitution, together with unspecified state and federal criminal statutes.  In Count 4, he appears to allege "tort conversion" as a result of the violation of the same rights.  One is hard pressed to analyze these claims because, quite simply, Folkers' Amended Complaint makes no sense and fails to plead with any degree of sufficiency any claim under these theories.  That is, the Amended Complaint does not even demonstrate a "plausible" claim under the Kansas or United States Constitution.  Rather, Folkers simply recites paragraphs from the state and federal constitutions without alleging supporting facts for each.

**6.**     **State Tort Theories.**

In Counts 3 and 4 of Folkers Amended Complaint he attempts to allege state tort claims against the Defendants.

First, Folkers has failed to plead and comply with the provisions of K.S.A. § 12-105b. Because these claims are made against municipal employees and former elected officials in their official capacity, which is the same as a claim against the municipality, Folkers is required to plead and comply with the provisions of K.S.A. § 12-105b(d) in order to have standing and for this court

{O0319944}

to have subject matter jurisdiction over those claims. *Sleeth v. Sedan City Hospital*, 294 Kan. 854, ¶2 (2014). A plaintiff's failure to substantially comply with these statutory requirements precludes a plaintiff from obtaining relief. *Id.* at ¶3. To be clear, not only is a plaintiff required to comply with the provisions of the statute, but he is also required by K.S.A. § 60-209(c) to <u>plead</u> the performance of a condition precedent. *Huehl v Board of County Commissioners of the County of Lincoln,* 2013 WL 17299259 (April 19, 2013). Folkers has done neither.

Separately, Count 3 alleges a claim for abuse of process which is facially deficient. An abuse of process claim concerns the improper use of process after it has been issued. *Jackson & Scherer, Inc. v. Washburn*, 209 Kan. 321, 331 (1972). Folkers' abuse of process claim turns on his contention that Judge Drill and the City lacked jurisdiction because the City is not a "natural being." [Amended Complaint, Doc. 34, Count 1, ¶ ii-jj]. There is no legal support under either state or federal law for this contention and, therefore, this claim must be dismissed.

In Count 4 Folkers alleges that the Defendants engaged in "tort conversion." A brief review of applicable Kansas case law fails to reveal such a legal theory. Assuming for the sake of this motion that Folkers intended to assert the tort of conversion, he fails to state a claim against any defendant. Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. *Snider v. MidFirst Bank*, 42 Kan.App.2d 265 (2009). Here, Folkers does not allege that any of the individual defendants committed an unauthorized assumption or exercise of the right of ownership over his goods or personal chattels. Rather, he simply had a beef with the Municipal Court over its jurisdiction. Because of this, Folkers fails to state a claim against any of the individual defendants and for this reason this claim must be dismissed.

7.     **Criminal Statutes**.

In his Amended Complaint, Folkers appears to assert a private cause of action against the Defendants for a violation of criminal statutes in the introductory paragraph and in other vague references throughout that document.[10]

Courts, generally, will not infer a private cause of action where a statute provides criminal penalties, but does not mention civil liability.   *Lay v. Horizon/CMS Healthcare Corp.*, 60 F.Supp.2d 1234, 1242 (D. Kan. 1999); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994))(Every criminal statute passed for the benefit of some particular class of persons does not carry with it a concomitant civil damages cause of action); *Cort v. Ash*, 422 U.S. 66, 80 (1975)(Private right of action may not be inferred from a criminal prohibition).  Generally, criminal statutes, state or federal, do not create a private cause of action. Instead, they are enacted to protect the public-at-large and provide a penal remedy for their violation.  *Mondonedo v. Henderson*, 2012 WL 3245440 (D. Kan. August 9, 2012).

Here, Folkers' Amended Complaint fails to direct the court or the Defendants to any state or federal criminal statute which provides a civil remedy under these legal theories.  Rather, he simply refers to the Defendants as having committed state and federal felonies.  These allegations are insufficient to state a claim for a private right of recovery.

8.     **Declaratory Judgment**.

In the Damages section of his Amended Complaint, Folkers seeks an order "nullifying" any summons issued to him by the City as well as any arrest or criminal charges. It is unclear whether this request for relief is being brought under the state or federal Declaratory Judgment

---

[10] Identical allegations were made in *Folkers v. Castle*, only in that action there were additional counts specifically referencing felony perjury and treason.  Folkers has apparently utilized the *Castle* Petition as a templet and simply deleted those counts, but leaving reference to certain criminal statutes in the first paragraph of his Amended Complaint.

Acts.  In any event the outcome is the same.

In determining whether to exercise their discretion under the federal Act to hear a claim for declaratory judgment, District Courts are to consider the following factors:  (1) Whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of the procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.  28 U.S.C. § 1201(a); *Mid-Continent Cas. Co. v. Village at Deer Creek*, 685 F.3d 977 (10th Cir. 2012).

The Act does not "extend" the federal courts jurisdiction, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671; and federal courts determining declaratory judgment jurisdiction often look to the "character" of the declaratory judgment defendants "threatened action," *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952).  That is, the inquiry is whether the defendant's hypothetical action would necessarily present a federal question. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust of Southern Cal.*, 469 U.S. 1, 19; *Medtronic, Inc. v. Mirowski Family Venturers, LLC*, 134 S.Ct. 843, 844-45 (2014).

District Courts are not obligated to exercise jurisdiction over a claim for declaratory relief. The Act states that federal courts "upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201.

Here, Folkers requests that the court intrude into the function of a state municipal court relative to a state municipal court charge.  Further, he asks this court to expunge the record maintained by the Municipal Court.  In analyzing the factors set forth above, this is simply not a

case in which the court should undertake to declare the rights among the parties.  That is, a declaration from this court would not settle the underlying Municipal Court charges, would not serve a useful purpose in clarifying any legal issues, is being requested solely for the purpose of obviating the authority of the Municipal Court, would definitely increase the friction between the federal and municipal courts, and would unnecessarily usurp the remedies available to the Plaintiff at state law, which are in the form of an appeal of any municipal charge to the District Court or the filing of a petition for expungement, all of which are provided by state statute.

The same result is reached if the court analyzes the request under the state declaratory judgment act at K.S.A. § 60-1701.  In order to entertain an action for declaratory judgment there must be an actual controversy.  Implicit in this requirement is that Kansas courts "will not render advisory opinions on abstract or moot questions of law."  *See, Cady v. Cady*, 224 Kan. 339, 345 (1978); 2 Garde's Kansas Civ. Proc. 2d Annot. § 60-1701 (1979).  Whether a dispute rises to level of actual controversy is one of degree and the entertainment of the action rests within the sound discretion of the trial court.  *Mechling Barge Lines v. US*, 368 U.S. 324, 331 (1961).

Kansas law is clear that a declaratory action is not a proper "avenue for re-litigation of a legal issue already decided by a tribunal in which an actual controversy is still pending and from which an orderly appeal process may be pursued."  *Ratley v. Sheriff's Civil Service Board*, 7 Kan.App.2d 638, 640 (1982).

Here, the matters are still pending before the Municipal Court which brought Folkers to this Court.  Should he fail at that level he has a process available to him to address the issue. Therefore, this court should decline to Folkers' request for a declaratory judgment.

## V.    CONCLUSION

Based upon the foregoing arguments and authorities, Defendants, Judge Keith Drill,

Former Mayor Laura McConwell, and Police Officer Wayne Brinkley, respectfully request that this court grant their Motion to Dismiss, and award costs and attorney's fees pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, LLP

/s/ Michael K. Seck
Michael K. Seck, #11393
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas  66210
(913) 339-6757 / (913) 339-6187 (FAX)
mseck@fisherpatterson.com
ATTORNEY FOR DEFENDANTS
HON. KEITH E. DRILL, LAURA McCONWELL and
WAYNE BRINKLEY

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing *Memorandum in Support of Defendants' Motion to Dismiss* on this 30th day of January, 2015, and served a copy by United States mail, postage prepaid, upon the following:

Chris Folkers, Pro Se
4624 West 72nd Street
Prairie Village, Kansas 66208

/s/ Michael K. Seck
Michael K. Seck, #11393

{O0319944}

24